**DILLON et al., Appellants,**

**v.**

**BUNDY, Appellee.**

[Cite as *Dillon v. Bundy* (1991), 72 Ohio App.3d 767.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–82.

Decided March 5, 1991.

*Wilcox, Schlosser & Bendig Co., L.P.A.,* and *Charles H. Bendig,* for appellants.

*Schottenstein, Zox & Dunn, Rick E. Marsh* and *Pamela B. Browning,* for appellee.

FAULKNER, Judge.

Plaintiffs appeal from a judgment of the Franklin County Court of Common Pleas denying their motion for a new trial. Plaintiffs requested a new trial on the issue of damages for the reason that the jury verdict in their favor was inadequate.

Plaintiffs, Jo Mae Dillon and Roger W. Smith, were injured on May 10, 1985 when defendant, Fay E. Bundy, negligently operated her automobile into plaintiffs' vehicle at the intersection of Sullivant and Davis Avenues. Defendant failed to stop at a flashing red stop signal, which signal was flashing yellow for plaintiffs. As a result of defendant's negligence, plaintiffs sustained various injuries.

Plaintiffs initiated this action for negligence in the common pleas court on January 28, 1987, seeking compensation for their injuries. Prior to trial, the trial court granted partial summary judgment in favor of plaintiffs on the issue of defendant's negligence, leaving for trial only the determination of any comparative negligence on the part of plaintiffs and the amount of any damages sustained as a result of defendant's negligence.

At the conclusion of the jury trial conducted in November 1989, the trial court denied plaintiffs' motion for a directed verdict on the issue of comparative negligence and left that issue for the jury's determination. The jury returned a verdict in favor of plaintiffs in the amounts of $4,050 in favor of plaintiff Dillon and $3,750 in favor of plaintiff Smith. The jury also found no comparative negligence on the part of either plaintiff.

Contending that the verdict was clearly inadequate in light of the evidence adduced regarding both the severity of the injuries and the amount of the medical bills incurred, plaintiffs moved the trial court for a new trial pursuant to Civ.R. 59, contending that the verdict was contrary to the weight of the evidence and/or the result of passion or prejudice resulting from improper argument by defense counsel. On January 17, 1990, the trial court denied plaintiffs' motion for a new trial and this appeal followed.

Plaintiffs assert the following six assignments of error for consideration by this court:

"1. The trial court erred in refusing to sustain objections to argument and opening statement by defense attorney Marsh accusing both plaintiffs' attorney and plaintiffs with running up chiropractic bills for unnecessary treatment in order to build up a claim, characterizing the chiropractic treatment as 'shake and bake', calling plaintiffs' attorney 'Dr. Bendig', and most specifically presenting as factual, a totally false scenario of a meeting in the plaintiffs' attorney's office between the attorney and plaintiffs, where the attorney tells the plaintiffs to go down the street to the local chiropractor and run up bills in order to build up a claim.

"2. The trial court erred in refusing to grant a new trial after the verdict based upon the misconduct of defense counsel during the trial proceedings, as described in the first assignment of error, and as apparent in the transcript of the entire proceedings.

"3. The trial court erred in denying motion for summary judgment and motion for directed verdict on the question of comparative negligence by plaintiffs.

"4. The trial court erred in refusing to allow the investigating police officer to give an opinion that the plaintiff was not traveling at an excessive rate of speed, and give an opinion that the plaintiffs did not contribute to the collision, these opinions being based upon the facts he assembled at the scene as part of his official investigation, and based upon his extensive experience in accident investigation.

"5. The trial court erred in unreasonably restraining plaintiffs' closing argument to the jury where counsel for plaintiff[s] asked the jury to attempt

to feel the clients' loss and understand the experience of what it would be like to endure this loss, the lower court finding such argument by attorney for plaintiff[s] to be improper argument.

"6. The lower court erred in refusing to grant a new trial upon the inadequacy of the verdict based upon evidence properly admitted in the trial proceedings, and based upon the verdict being against the manifest weight of the evidence."

Plaintiffs assert in their first assignment of error that the trial court erroneously failed to sustain their objections to improper argument by defense counsel during both opening statement and closing argument. Plaintiffs maintain that defense counsel's reference to the amount of medical treatment received before plaintiffs retained counsel and the amount of such treatment received after they retained counsel was improper, made all the more so by defense counsel's closing argument which cast aspersions on plaintiffs and their counsel. It is plaintiffs' position that the improper argument was a calculated attempt to sway the jury by accusing plaintiffs' counsel of acting deliberately to suppress the truth and by accusing plaintiffs of dishonesty.

It is well settled that counsel is accorded wide latitude in opening statement subject to the restriction that it is impermissible to comment on incompetent, inadmissible or improper evidence which is patently harmful. *Maggio v. Cleveland* (1949), 151 Ohio St. 136, 38 O.O. 578, 84 N.E.2d 912, paragraph two of the syllabus. This same standard is applied to closing argument. *Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313, paragraphs two and three of the syllabus, and *Drake v. Caterpillar Tractor Co.* (1984), 15 Ohio St.3d 346, 348, 15 OBR 468, 470–471, 474 N.E.2d 291, 293–294. Where counsel calls into question the integrity of a witness during closing argument which is not supported by evidence, the trial court is required to intervene so as to prevent further improper argument. *Plas v. Holmes Constr. Co.* (1952), 157 Ohio St. 95, 47 O.O. 86, 104 N.E.2d 689, paragraph three of the syllabus. Likewise, counsel is under a duty to refrain from unwarranted attacks upon opposing counsel. *Jones v. Macedonia-Northfield Banking Co.* (1937), 132 Ohio St. 341, 8 O.O. 108, 7 N.E.2d 544, paragraph one of the syllabus. Persistent abuses by counsel during closing argument are proper grounds for a new trial. *Id.* at paragraph three of the syllabus. Generally, the effect improper argument has upon a jury can be evaluated in terms of both its evidentiary basis and the likelihood that such argument will improperly prejudice the jury. See, *e.g., Caserta v. Allstate Ins. Co.* (1983), 14 Ohio App.3d 167, 169–170, 14 OBR 185, 186–188, 470 N.E.2d 430, 433–434.

■ In this case, the defense strategy was to demonstrate that the amount of damages incurred by plaintiffs was both unreasonable and unnecessary in light of the severity of their injuries. Defendant put on evidence regarding the amount of medical bills incurred by plaintiffs as a result of their injuries prior to retaining counsel and the amount of treatment rendered subsequent to retaining counsel. Defendant also adduced evidence that plaintiffs' medical expert, who also provided their chiropractic care upon referral from plaintiffs' counsel, had a financial arrangement with plaintiffs, giving him a pecuniary stake in the outcome of the trial. As such, the latitude given defense counsel by the trial court in commenting on this evidence in opening statement and closing argument was proper. While defense counsel's two isolated remarks regarding plaintiffs' counsel and the validity of chiropractic care were inappropriate, no specific objection was made by plaintiffs to either comment and cannot be said to be so egregious in light of the remaining evidence adduced so as to warrant reversal for a new trial. The first assignment of error is overruled.

Plaintiffs assert in their second and sixth assignments of error that the trial court erred in denying their motion for a new trial on the issue of damages. Specifically, plaintiffs contend in their second assignment of error that the low amount of damages awarded in favor of both plaintiffs when compared with the $33,000 verdict awarded earlier by a panel of arbitrators was so inadequate as to have been the result of either passion or prejudice. Plaintiffs support this argument by reference to the alleged misconduct on the part of defense counsel. Under their sixth assignment of error, plaintiffs contend that a jury verdict for less than $8,000 was clearly contrary to the weight of the evidence which demonstrated medical expenses exceeding $11,000.

■ The denial by a trial court of a motion for a new trial is subject to reversal on appeal only upon demonstration that the trial court abused its discretion. *Yungwirth v. McAvoy* (1972), 32 Ohio St.2d 285, 61 O.O.2d 504, 291 N.E.2d 739; and *Siegel v. Mt. Sinai Hospital* (1978), 62 Ohio App.2d 12, 23, 16 O.O.3d 54, 61–62, 403 N.E.2d 202, 210. In assessing whether a verdict is contrary to the weight of the evidence, trial courts are vested with wide discretion to determine whether a manifest injustice has been done. *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 52 O.O.2d 376, 262 N.E.2d 685, paragraph three of the syllabus. Generally, a new trial should be granted pursuant to Civ.R. 59(A)(6) where it appears that the jury awarded inadequate damages because it failed to consider an element of damages established by uncontroverted expert testimony. *Baum v. Augenstein* (1983), 10 Ohio App.3d 106, 107–108, 10 OBR 129, 130–131, 460 N.E.2d 701, 702–703. However, if the verdict is supported by substantial competent, credible evidence, a trial court

abuses its discretion in granting a new trial based upon the weight of the evidence. *Hancock v. Norfolk & Western Ry. Co.* (1987), 39 Ohio App.3d 77, 81, 529 N.E.2d 937, 941–942; and *Verbon v. Pennese* (1982), 7 Ohio App.3d 182, 183, 7 OBR 229, 229–230, 454 N.E.2d 976, 978–979.

In assessing whether a trial court has abused its discretion under Civ.R. 59(A)(4), a reviewing court should consider the amount of the verdict, whether the jury considered incompetent evidence, improper argument by counsel or other improper conduct which can be said to have influenced the jury. See *Fromson & Davis Co. v. Reider* (1934), 127 Ohio St. 564, 189 N.E. 851, paragraph three of the syllabus; *Larrissey v. Norwalk Truck Lines Inc.* (1951), 155 Ohio St. 207, 219–222, 44 O.O. 238, 243–245, 98 N.E.2d 419, 426–427; and *Mansfield Railway, Light & Power Co. v. Barr* (1914), 2 Ohio App. 367, 381–382, 26 Ohio C.D. 79, 19 Ohio C.C.N.S. 466.

Regarding plaintiffs' argument that the jury verdict was influenced by passion and prejudice, this court has already rejected the contention that counsel for defendant so exceeded the bounds of propriety in either opening statement or closing argument as to warrant reversal. Rather, in light of the evidence adduced, defense counsel's comments were within the scope of commentary upon the evidence before the jury. Merely because a panel of arbitrators previously awarded plaintiffs a verdict in the amount of $33,000 based upon essentially the same evidence received by the jury is not evidence, standing alone, that the jury lost its way. Rather, the verdict is entirely consistent with the defense theory that the $11,000 medical bill incurred by plaintiffs was both excessive and unreasonable. This theory finds support in the record based upon the testimony of defendant's medical expert. That testimony indicates that the chiropractic care rendered on behalf of plaintiffs was not necessitated by their injuries resulting from defendant's negligence and was not reasonable in amount. The trial court did not abuse its discretion in denying plaintiffs' motion for a new trial pursuant to either Civ.R. 59(A)(4) or (6). The second and sixth assignments of error are overruled.

Plaintiffs finally challenge under their fourth and fifth assignments of error several procedural and evidentiary rulings made by the trial court. In their third assignment of error, plaintiffs contend that the trial court erred in failing to take the question of comparative negligence from the jury either by way of Civ.R. 56 or Civ.R. 50(A). It is plaintiffs' position that the only evidence before the trial court upon either motion indicated that plaintiffs were properly and lawfully operating their motor vehicle through the intersection when defendant failed to stop at a flashing red signal and negligently caused a collision with plaintiffs' vehicle. However, plaintiffs have failed to demonstrate how any error with respect to either motion was prejudicial in

light of the jury verdict finding defendant one hundred percent negligent. See Civ.R. 61. Accordingly, the third assignment of error is overruled.

For this same reason, the fourth assignment of error is also overruled. Regardless of any error committed by the trial court in excluding the testimony of the investigating police officer regarding plaintiffs' contributory negligence, any such error is nonprejudicial in light of the jury verdict on the issue of liability in favor of plaintiffs. Finally, plaintiffs contend that the trial court improperly restricted the scope of their closing argument which asked the jurors to put themselves in the place of plaintiffs for purposes of assessing damages for pain and suffering. While this type of argument, commonly known as the "golden rule" argument, is no longer *per se* prejudicial so as to warrant a new trial, such argument nevertheless remains objectionable and a trial court does not abuse its discretion in prohibiting such argument. See *Skinner v. Colonial Federal Savings & Loan* (Oct. 24, 1989), Logan App. No. 8-87-19, unreported, 1989 WL 129413; *Schumacher v. Blackburn* (June 22, 1988), Knox App. No. 87-CA-32, unreported, 1988 WL 48579; and *Brock v. Miamisburg* (Dec. 15, 1986), Warren App. No. CA86-02-016, unreported, 1986 WL 14118. The fifth assignment of error is overruled.

Having overruled all assignments of error, the judgment of the court of common pleas is affirmed.

*Judgment affirmed.*

STRAUSBAUGH, J., concurs.

BRYANT, J., concurs separately.

DAVID C. FAULKNER, J., of the Hardin County Common Pleas Court, sitting by assignment.

PEGGY BRYANT, Judge, concurring separately.

Being unable to agree completely with the majority's disposition of appellants' first assignment of error, I write separately.

Discussion of the assignment of error requires that portions of defense counsel's closing argument be set out herein. In closing argument, counsel for defendant argued:

"Let me, at the risk of sounding kind of crass and maybe offending you, *let me tell you how this personal injury claim thing works*, what's done. The plaintiff's lawyer sends his client to a doctor, sends his client to a doctor who will accept subjective complaints and treatment, hopefully treat extensively. Because what is looked at when these things come to the court, when they are evaluated for settlement, what are the amount of the medical bills.

"On the other hand, the defendant in the case of this kind sends the plaintiff to a doctor who will not accept subjective complaints, who says, I want to see it someplace, I want to be able to feel it, see it, hear it, something else. That's basically the difference.

"I'm very suspicious of plaintiffs who go to a lawyer before they have really gone to a doctor.

" * * *

"Imagine a conversation with Miss Dillon and Mr. Smith with their lawyer in December, early December or mid December. They come in and they say, well, they had seen their lawyer to talk about the case. The question is asked of them: How did you like that Dr. Theodotou I sent you to. Well, he's okay, they said. *This is hypothetical. I don't know.* Well, you are both still treating with him; aren't you?

" * * *

"Let's go back. Let's imagine this setting. Question was: You are still treating with Dr. Theodotou; aren't you? No.

"Oh. Well, you just stopped recently; didn't you?

"No.

"Oh. Well, when you were treating with him you went to him quite frequently; didn't you?

"No.

"Oh. Well, when you were going to him he did put you in the hospital; didn't he?

"No.

"Oh. Well, when you were going to him he did send you out for a lot of physical therapy; didn't they?

"No, he didn't.

"Oh. Well, he saw you enough to run up the bills; didn't he?

"No, only a couple hundred dollars.

"Oh. Well, he treated you with more than just pain pills; didn't he?

"No.

"Oh. Well, come over here to the window. See that office over there with the chiropractors? That's where I'm going to send you.

"Now, I don't know whether that conversation took place, but what I put in that hypothetical situation, those are facts. * * *" (Emphasis added.)

In my view, the foregoing is improper closing argument. Counsel argued a conversation scenario not found in the record, although various facts included in the scenario were in evidence. Indeed, counsel admits that he does not know whether the conversation occurred. While I agree with the majority's basic statements of law concerning the latitude afforded counsel in closing argument, in my opinion defense counsel's argument herein exceeded those bounds.

Equally as disturbing is defense counsel's reference to the legal process and the trial of personal injury claims as if they were a game: "this personal injury claim thing." Apart from the demeaning language used in association with legal proceedings, counsel's arguments suggests a less serious responsibility on the part of the jury in deciding smaller personal injury cases.

In the final analysis, I cannot but conclude that the trial court's failure to sustain plaintiffs' objection to defense counsel's argument was error. However, given the overwhelming evidence in this case supporting the jury's resolution of the issues involved, I am compelled to find the error not prejudicial. Accordingly, as does the majority, I would overrule the first assignment of error.